## UNITED STATES, Appellee

v

## HAROLD T. GOODNIGHT, Corporal, U. S. Marine Corps, Appellant

### 9 USCMA 542, 26 CMR 322

*Captain Frederick D. Clements* argued the cause for Appellant, Accused.
*Major Charles R. Larouche* argued the cause for Appellee, United States.
With him on the brief was *Lieutenant Colonel Charles H. Beale, Jr.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried and convicted of four separate violations of a lawful regulation, Article 92, Uniform Code of Military Justice, 10 USC § 892, and one offense of solicitation, Article 134, Uniform Code of Military Justice, 10 USC § 934. The sentence imposed by the court was bad-conduct discharge, forfeiture of $50 per month, confinement at hard labor for one year, and reduction to private. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, forfeiture of $50 per month, confinement at hard labor for nine months, and reduction to private. The board of review affirmed. Upon the accused's petition, this Court granted review to consider two issues, both of which pertain to his conviction of the offense of solicitation.

The first issue concerns the correctness of the law officer's instructions upon the elements of that crime. The offense charged was that the accused solicited a recruit to disobey a lawful general regulation, to wit: Article 1258, U. S. Navy Regulations, dated August 9, 1948, by collecting from members of a recruit platoon certain money intended for drill instructors who were the recruit's official superiors. The particular paragraph of U. S. Navy Regulations which prohibits the solicitation provides in pertinent part as follows:

"1. No person in the Naval Establishment shall at any time solicit contributions from other persons in the naval service or from other officers, clerks, or employees in the Government service for a gift or present to persons in superior official positions;

nor shall any persons in such superior official positions receive any gift or present offered or presented them as a contribution from persons in Government employ (including persons in the naval service) receiving a less rate of pay than themselves, nor shall any of said persons make any donation as a gift or present to any such official superiors."

The recruit testified that during the period in question he was a member of a Recruit Training Platoon of which the accused was a drill instructor. The accused approached him and inquired whether Sergeant Nix, a senior drill instructor in the platoon, had taken up a collection among the recruits. He replied in the affirmative and, when asked the amount, informed the accused that about $42.00 had been collected. The accused then told him that if the same amount were collected for him, he would permit the platoon to attend the theater that evening. Acting as an emissary, the recruit returned to the platoon, called its members together and revealed the conversation he had held with the accused. He told the platoon that in his opinion it was unfair to require them to pay again and advised that they forego the recreational privilege. His advice was accepted, and the information was relayed to the accused, who immediately ordered the unit to retire for the night. A short time later the accused changed his mind and ordered the platoon into formation for the purpose of marching them to the theater. Due to the lateness of the hour, they were unable to gain admittance and they were marched back to their area.

The accused, testifying in his own

behalf, admitted familiarity with the regulations in question. He readily acknowledged having requested the recruit to collect money for him and asserted his reason for doing so was because he had "heard rumors that the senior drill instructor, Sergeant Nix, was taking up a collection, so . . . [he] wanted to see whether it was going on or not." He further asserted that had the recruit been successful in his collection, he would have reported the entire matter to his supervisor. To support this novel theory, accused went on to state that after he had made the request he told the recruits of his purpose in doing so and cautioned them "not to give any money to any collections for drill instructors." On cross-examination, he was asked why he believed it necessary to institute a collection after he had been told by the recruit that Sergeant Nix had already received a sizable sum. He replied that his purpose was not "especially" to trap Sergeant Nix, but "just to find out if things were going on." Had the recruit been successful in collecting money, accused claimed he would then have reported Sergeant Nix; otherwise he felt it was simply "not ethical for a corporal to run a staff sergeant up on rumor." He was later asked to explain how he expected to determine whether the recruits had previously been extorted by requesting a member of the squad to collect sums for him. He reasoned that had the platoon taken up a collection for him, he would have known that previous collections had been made. When asked how that fact would imply previous collections, his reply was, "It's just one of those things."

After both sides had made closing argument, the law officer instructed the court on the elements of the offenses charged. With respect to the solicitation offense, he charged the court as follows:

". . . Now, in that regard, I would like to call to the court's attention that acceptance of money contributed because of that solicitation is not involved in this offense. Whether any money was collected by Private Garrison is immaterial. The offense here involved is the act of solicitation itself. You have taken judicial notice of the paragraph of Navy Regulations and it will be provided for you in your deliberations, and I ask you to examine that paragraph and decide whether, in view of all the evidence, if you believe that the accused, and if you believe this beyond a reasonable doubt, that the accused solicited Private Garrison, a recruit subject to his orders, to take up a collection from members of Recruit Platoon 194-A, intended for the drill instructors of that platoon, his official superiors, *then you are justified in finding the accused guilty, whether or not any money was actually collected, or whether or not the accused had what he considered, personally, a good reason for doing so.*" [Emphasis supplied.]

Defense counsel neither requested additional instructions nor objected to the instructions given.

Appellate defense counsel contend that the portion of the law officer's instruction which advised the court members the accused could be found guilty of soliciting a recruit to violate military law, regardless of any personal belief he entertained that he had good reason to do so, was erroneous. We agree that, as a general statement of law applicable to this type of case, the instruction was incorrect. It seems well settled and good law that, "It is not solicitation or instigation of a crime for a person, having reason to believe that another is committing or intending to commit a crime, to furnish an opportunity for its commission, if the purpose is in good faith to secure evidence of guilt and not to induce an innocent person to commit a crime." 22 CJS, Criminal Law, § 78, page 143, and cases there cited. If this had been the accused's theory of defense, we would not hesitate to find prejudice in the law officer's instruction when he foreclosed the court-martial's consideration of the accused's motivations in soliciting the crime. In fact, had the evidence tended to show that accused in good faith sought to uncover evidence to prove Sergeant Nix's complicity in a criminal adventure, then the court should have been instructed

that, if they believed he was in good faith seeking to obtain evidence that the sergeant was committing or intending to commit a crime, he should be found not guilty. However, those are not the circumstances under which the accused testified he acted in this case. He judicially admitted he initiated an unlawful collection of funds among the recruits in his charge. This had no reasonable connection with the criminal activities of a third person—in this instance Sergeant Nix. He further admitted he purposely violated the regulation. If his testimony had stopped there, the crime would have been completely established and the law officer's instructional error would have been nonprejudicial. What difference then is made by his excuse he was seeking to track down rumors that others were offending against the law? Certainly, one cannot defend against a pandering charge on the theory it is permissible to pander purely to prove or disprove rumors that others are committing the same crime. Accepting accused's story at its face value, he was not obtaining evidence of another's illicit conduct, he was inducing an apparently innocent man to aid him in committing an offense of his own, unless his selected collector was in conspiracy with Sergeant Nix. Yet he suspected no such criminality on the part of the recruit and no assertion to that effect has ever been advanced. Absent that status, it is obvious accused could not hope to obtain incriminating evidence against the sergeant by the strategy of imitating the criminal conduct of the latter. His conduct, therefore, narrows to an effort on his part to determine if Nix was committing a crime by seeing if he could get away with the same thing himself. Considered in this posture, his testimony, if believed, gave an excuse which could not legally serve to exculpate him, for seeking to establish his personal belief that he could operate outside the law was not a legitimate reason for his criminal act and did not raise a valid defense. His testimony is no more or less than a judicial confession of a crime and, as a consequence, the law officer's erroneous instruction was immaterial and harmless in this case.

The remaining issue relates to the law officer's instruction that the maximum imposable punishment for the solicitation offense was dishonorable discharge, total forfeitures, and confinement at hard labor for two years. The Government concedes the instruction was prejudicially erroneous because the type of solicitation here involved is punishable as a simple disorder which carries a maximum sentence of confinement at hard labor for four months and forfeiture of two-thirds pay per month for a like period. We accept that concession. See United States v Haveriland, 8 USCMA 621, 25 CMR 125.

For this reason, the decision of the board of review is reversed and the record is returned to The Judge Advocate General of the Navy for reference to a board of review for a reassessment of an appropriate sentence in the light of this opinion.

Chief Judge QUINN concurs.

Judge FERGUSON concurs in the result.